**NOT FOR PUBLICATION**                                          **FILED UNDER SEAL**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ASLON GOOW SR., | Civil Action No. 08-6285 |
| Plaintiff, | **OPINION** |
| v. | |
| JOSE TORRES, JAMES T. WITTIG, TROY OSWALD, PATRICK PAPAGNI, MICHAEL FINER, THE CITY OF PATERSON, JOHN DOES AND JANE DOES, | |
| Defendants. | |

This matter comes before the Court by way of James Wittig, Troy Oswald, and the City

of Paterson's (collectively "Defendants")[1] Motion for Summary Judgment [Docket Entry No.

111] and Plaintiff's Motion for Leave to File a Second Amended Complaint [Docket Entry No.

121]. The Court has considered the submissions in support of and in opposition to the present

motions and decides this matter without oral argument pursuant to Rule 78 of the Federal Rules

of Civil Procedure. For the reasons set forth below, Plaintiff's Motion for Leave to File a

Second Amended Complaint is denied, and Defendants' Motion for Summary Judgment is

granted.

---

[1] Plaintiff voluntarily dismissed all claims against Jose Torres, Patrick Papagni, and Michael Finer with prejudice. Pl.'s Br. in Support of Pl.'s Motion for Leave to File a Second Amended Compl. ("Pl.'s Br.") [Docket Entry No. 121] at 2.

## I.    BACKGROUND

Plaintiff Aslon Goow, Sr. ("Plaintiff") was a Councilman for the Second Ward in the City of Paterson from July 2000 to June 2012. Defs.' Statement of Facts ("DSOF") at ¶ 2. During a portion of this time, including the date at issue in this action, Plaintiff also served as a Class II Special Officer in the Town of Haledon. DSOF at ¶ 3. A Class II Special Officer has the same law enforcement duties as a regular police officer but only while the Special Officer is on duty and in the municipality where he is employed. DSOF at ¶ 5. As part of his training for this position, Plaintiff completed basic training, which included vehicle pursuit training. DSOF at ¶ 4.

On December 24, 2006, Plaintiff was asleep at his home in Paterson, New Jersey, when he heard a noise outside which he believed was caused by two individuals attempting to steal his neighbor's vehicle. DSOF at ¶ 9. Upon hearing this disturbance, Plaintiff got into his sister's vehicle, which he operated exclusively, and pursued these suspects through the City of Paterson, onto Route 19, and onto the Garden State Parkway. DSOF at ¶ 10. Plaintiff's vehicle was equipped with a police radio, which Plaintiff received from Chief Postrino of the Patterson Fire Department. DSOF at ¶ 14. During Plaintiff's pursuit of the suspects, he used this radio to transmit over the Patterson Police radio channel and identified himself as "C2," which allegedly stood for "Councilman—Second Ward." DSOF at ¶¶ 11, 15. Plaintiff also activated the emergency lights he had installed on the vehicle, which included flashing headlights and tail lights. DSOF at ¶ 17.

Plaintiff's pursuit lasted approximately 23 minutes. DSOF at ¶ 18. During the chase, Paterson Police Officer Goodson was dispatched in a marked unit to pursue these vehicles. DSOF at ¶ 19. Officer Goodson estimated that Plaintiff and the suspects' vehicles were traveling

2

between fifty and fifty-five miles per hour. DSOF at ¶ 21. Officer Goodson attempted to catch the vehicles while reporting the speeds and locations of the vehicles to police headquarters, pursuant to police procedure. DSOF at ¶ 24. Sergeant Salvatore Feola, a supervisor in the patrol at the time of the incident, monitored the pursuit. DSOF at ¶ 26. When Officer Goodson reached the city limits, Defendants allege that Sergeant Feola directed Officer Goodson to discontinue the pursuit as the State Police were notified. DSOF at ¶ 28. Plaintiff responded to Sergeant Feola's instructions, "you got to get these guys. We can't break this one off." DSOF at ¶ 29. Plaintiff continued to pursue the vehicles into Clifton and southbound on the Garden State Parkway before ending his pursuit. DSOF at ¶ 29.

Following this incident, Officer Goodson completed an Offense Report, which Plaintiff conceded was accurate. DSOF at ¶ 31. Chief Wittig then instructed Captain Finer, the Commander of the Internal Affairs Unit, to conduct an investigation into Plaintiff's actions.[2] DSOF at ¶ 34. Following this preliminary investigation, Captain Finer found that Plaintiff had not impersonated a police officer during the pursuit because Plaintiff never identified himself as a police officer during the radio transmissions. DSOF at ¶ 37. Captain Finer also concluded that he could not issue an equipment violation against Plaintiff, who was not the registered owner of the vehicle he was operating, or a reckless driving citation, as there was insufficient evidence supporting such a charge. DSOF at ¶¶ 38-39.

On January 14, 2007, Captain Finer was transferred from Internal Affairs to Narcotics and Captain Oswald was transferred from Patrol to Internal Affairs. DSOF at ¶ 40. In his new

---

[2] The parties dispute whether this was a "confidential investigation" or an "internal affairs" investigation. *See* DSOF at ¶ 43; *but see* Pl.'s Resp. to DSOF at ¶ 43. For purposes of the present motions, the Court will resolve this factual dispute in Plaintiff's favor. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995). Accordingly, the Court will consider this an "internal affairs" investigation.

3

position, Captain Oswald reviewed all open investigations, including Captain Finer's investigation into Plaintiff's conduct. DSOF at ¶ 42. Captain Oswald discussed this investigation with Chief Wittig, who directed him to continue the investigation and forward any findings to the Prosecutor's Office for possible enforcement. DSOF at ¶ 46. Captain Oswald met with Officer Goodson. DSOF at ¶ 47. Captain Oswald also spoke to Lieutenant Papagni, an accident reconstruction expert, and asked if he could estimate the speed of Plaintiff's vehicle based on the radio transmissions and surveillance video retrieved from a Burger King. DSOF at ¶ 48. Lieutenant Papagni opined that Plaintiff was traveling in excess of fifty miles per hour. DSOF at ¶ 48. Accordingly, on January 22, 2007, Captain Oswald issued Plaintiff a motor vehicle summons for speeding.[3]  DSOF at ¶ 49.

On January 23, 2007, at a Council meeting, Plaintiff made a public statement about his December 24, 2006 pursuit. DSOF at ¶ 51. The next month, an unidentified male called Captain Oswald about this meeting. DSOF at ¶ 52. The caller was upset about Plaintiff "chasing criminals around for stealing cars," and remarked, "yea, I remember when he was breaking in houses and stealing cars himself." DSOF at ¶¶ 53-54. The caller also stated, "I can't believe the travesty of someone who went to jail for B & E's now pretending to be some kind of super cop, carrying a gun after spending time in the county." DSOF at ¶ 54. Captain Oswald reported this call to Chief Wittig, and Chief Wittig asked him to investigate the allegations as he would any

---

[3] Plaintiff's summons was subsequently transferred from the Paterson Municipal Court to the West Paterson Municipal Court for disposition. DSOF at ¶ 93. On approximately April 18, 2007, the Passaic County Prosecutor's Office superseded in the prosecution of the speeding summons issued to Plaintiff. DSOF at ¶ 94. Thereafter, on motion by the Passaic County Prosecutor, the speeding summons was dismissed by a Superior Court Judge on May 25, 2007. DSOF at ¶ 95. In the affidavit in support of the motion to dismiss the speeding summons, First Assistant Prosecutor Dante Mongiardo stated that "the State is of the opinion that even if [Plaintiff] operated his motor vehicle in excess of the posted speed limits, such was a *de minimus* infraction and should be dismissed." DSOF at ¶ 96.

other anonymous call." DSOF at ¶ 55. Chief Wittig also told Captain Oswald that Plaintiff's

permit to carry weapons recently expired and advised him to research whether Plaintiff would be

permitted to renew it. DSOF at ¶ 56. A person is disqualified from purchasing or carrying

firearms if he has been convicted of certain crimes, including burglary. DSOF at ¶ 58.

Plaintiff had submitted two gun applications. DSOF at ¶ 59. On August 31, 1995, he

submitted an application to purchase a handgun to the Patterson County Police Department.

DSOF at ¶ 60. On this application, Plaintiff acknowledged "being adjudged a disorderly person

or a juvenile delinquent." DSOF at ¶ 61. On June 28, 2004, Plaintiff applied for a permit to

carry a weapon, which was approved by Chief Spagnola. DSOF at ¶ 62. On this application,

and a July 8, 2004, application to purchase another handgun, Plaintiff denied being "adjudged a

disorderly person or a juvenile delinquent." DSOF at ¶ 63. In light of the discrepancy between

these applications, Captain Oswald concluded that the applications were "inconsistent and

violated N.J.S.A. 2C:39-10[(c)] and 2C:58-3(c)(3)." DSOF at ¶ 66.

Captain Oswald continued his investigation and inspected the "Police Department Bible,"

which lists all offenses investigated by the Detective Bureau. DSOF at ¶ 67. This "Bible" listed

several investigations into Plaintiff's conduct in the mid-1970s. DSOF at ¶ 68. "Due to the

inconsistent responses in the gun permit applications and the lack of information reviewed by

Captain Oswald in the available arrest records, Captain Oswald advised Chief Wittig that he

believed Plaintiff had expunged records." DSOF at ¶ 69.

Chief Wittig obtained the expunged records from the Paterson Police Records Bureau and

gave them to Captain Oswald. DSOF at ¶ 70. The records only contained the motion papers and

orders for expungement filed on behalf of Plaintiff, no arrest records or police reports concerning

the underlying offense were obtained or conveyed. DSOF at ¶ 72. According to these

5

documents, Plaintiff had been arrested and/or convicted in excessive of 15 times; had served time in the Passaic County jail for these convictions; and had submitted two applications for expungement, both of which were granted.  DSOF at ¶¶ 73-75.

Captain Oswald took these records to the Passaic County Prosecutor's Office[4] to determine if these expunged records disqualified Plaintiff from carrying a firearm.  DSOF at ¶ 78.  Assistant Prosecutor Dante Mongiardo informed Captain Oswald that expunged records cannot be used to disqualify someone from carrying a firearm but noted that a police department can consider these records when reviewing applications for positions as police officers.  DSOF at ¶¶ 80-81.  Captain Oswald believed that "if the Haledon Police Department was aware of the prior expunged records of Plaintiff that Plaintiff would not have been hired" as a Class Two Special Police Officer.  DSOF at ¶ 83.  Captain Oswald also discussed the investigation with Corporation Counsel, Susan Champion, who agreed that the investigation should be forwarded to the Prosecutor's Office.  DSOF at ¶¶ 86-87.

Accordingly, Captain Oswald and Chief Wittig asked the Prosecutor's Office to determine whether Plaintiff was properly hired and whether he was permitted to own a gun.  DSOF at ¶ 88.  The Prosecutor's Office requested a meeting with Captain Oswald to discuss the investigation and directed Captain Oswald to separate his report into two, one report without any reference to the expunged records and one with.  DSOF at ¶¶ 88-90.  The Prosecutor's Office made "it clear they did not want to investigate or charge Plaintiff," so Chief Wittig directed Captain Oswald to take no further action.  DSOF at ¶¶ 91-92.

---

[4] The expungement records "were reviewed only by Chief Wittig, Captain Oswald, and members of the Passaic County Prosecutor's Office," although Plaintiff notes that Sue Champion, Corporation Counsel for Patterson County, was informed that these records existed.  *See* DSOF at ¶ 79; *see also* Pl.'s Resp. to DSOF at ¶ 79.

On December 23, 2008, Plaintiff brought the present action against Defendants. Docket Entry No. 1. Plaintiff amended his complaint on September 14, 2009, and, two years later, sought leave to file a Second Amended Complaint, which Judge Claire C. Cecchi denied on August 5, 2011. Docket Entry No. 18; Defs.' Br. in Support of Opp'n. to Pl.'s Motion Seeking Leave to File Second Amended Compl. ("Defs.' Opp'n.") [Docket Entry No. 125] at 1. Fact discovery ended on June 29, 2011. Defs.' Opp'n. at 3. Defendants filed their Motion to Dismiss on November 20, 2012, and Plaintiff filed his Motion for Leave to File a Second Amended Complaint on January 28, 2013.

## II.    LEGAL STANDARDS

### A.    Leave to Amend Standard

A party may amend a pleading "once as a matter of course at any time before a responsive pleading is served." *Shane v. Fauver*, 213 F.3d 113, 115 (3d Cir. 2000) (citing Fed. R. Civ. P. 15(a)). "After amending once or after an answer has been filed, the plaintiff may amend only with leave of court or the written consent of the opposing party, but 'leave shall be freely given when justice so requires.'" *Id.* (citing Fed. R. Civ. P 15(a)). "Among the grounds that could justify a denial of leave to amend are undue delay, bad faith, dilatory motive, prejudice, and futility." *Id.* (citations and quotations omitted). An amendment is futile when a proposed amended complaint "would fail to state a claim upon which relief could be granted." *Id.* Thus, "[i]n assessing 'futility,' the District Court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *Id.*

### B.    Summary Judgment Standard

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "'if the pleadings, the discovery and disclosure materials on file, and any affidavits

7

show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.'" *Bender v. Twp. of Monroe*, 289 Fed. Appx. 526, 526-27 (3d Cir. 2008) (quoting Fed. R. Civ. P. 56(c)). On a summary judgment motion, the moving party must first show that there is no genuine issue of material fact. *Celotex Corp. v. Cartrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. *Id.* at 324. The non-moving party must offer specific facts that establish a genuine issue of material fact; the non-moving party may not simply rely on unsupported assertions, bare allegations, or speculation. *See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999). The Court must consider all facts presented and the reasonable inferences drawn from them in the light most favorable to the non-moving party. *See Pa. Coal Ass'n*, 63 F.3d at 236.

## III.   DISCUSSION

### A.   Motion for Leave to File a Second Amended Complaint

On January 28, 2013, Plaintiff filed a Motion for Leave to File a Second Amended Complaint. Plaintiff's proposed Second Amended Complaint "eliminates Defendants Papagni, Finer, and Torres, and also eliminates counts and allegations regarding these Defendants." Pl.'s Br. at 3. In addition, Plaintiff includes two new allegations. *See* Pl.'s Br. at 6, 9-10. Plaintiff asserts a First Amendment retaliation claim and alleges violations of the New Jersey Civil Rights Act. Pl.'s Br. at 6, 9-10. Defendants oppose Plaintiff's motion asserting that "Plaintiff's delay in seeking leave to amend was undue, the presence of a potential First Amendment retaliation claim was or should have been apparent and no justification was offered for waiting until Defendants' filed motions for summary judgment." Defs.' Opp'n. at 4-5. The Court agrees.

8

"Delay in seeking leave to amend is undue if it places an unwarranted burden on the court or when the plaintiff has had previous opportunities to amend." *Omogbehin v. Cino*, 485 Fed. Appx. 606, 611 (3d Cir. 2012) (quotations omitted). Here, Plaintiff commenced this action on December 23, 2008, and waited in excess of four years to file this Motion for Leave to File a Second Amended Complaint. *See* Docket Entry No. 1; *see also* Pl.'s Br. at 40. Plaintiff's First Amended Complaint suggests that Plaintiff may have been aware of a potential First Amendment retaliation claim as early as September 14, 2009, but failed to assert it.[5] *See* First Amended Complaint ("FAC") at Count V, ¶¶ 4-5. In Count Five of the First Amended Complaint, Plaintiff argues that the "conduct of the Defendants was directly linked to Torres seeking to vindictively harm [Plaintiff], his political rival." FAC at Count V, ¶ 4. Plaintiff provides no justification for not including his First Amendment retaliation claim at this time.

Moreover, Plaintiff acknowledges that the "parties were well aware" of a potential First Amendment claim as early as October 2010. *See* Pl.'s Br. at 6. Plaintiff explains that the "very first day of Plaintiff's deposition, which took place on October 27, 2010, Defendants' counsel questioned Plaintiff as to his political activities in Paterson." Pl.'s Br. at 6. Plaintiff further acknowledges that "Plaintiff's counsel made it clear they were going to pursue First Amendment retaliation claims" during a January 19, 2012 settlement conference. Pl.'s Br. at 5. However, despite admittedly being aware of these claims as early as October 2010, Plaintiff waited until January 28, 2013—after Defendants' filed their Motion for Summary Judgment—to seek leave to assert this claim. Accordingly, the Court finds that Plaintiff's delay "in seeking leave to amend is undue," and Plaintiff's Motion for Leave to File a Second Amended Complaint is

---

[5] Plaintiff acknowledges that the "New Jersey Civil Rights Act is a state parallel to 42 USC 1983" but provides no justification for not asserting these parallel claims in his First Amended Complaint. See Pl.'s Br. at 10. Accordingly, Plaintiff's delay in seeking leave to assert his New Jersey Civil Rights Act claims was "undue." *See Omogbehin*, 485 Fed. Appx. at 611.

denied. *See Omogbehin*, 485 Fed. Appx. at 611 (quotations omitted); *see also Estate of Oliva v. N.J., Dep't of Law & Pub. Safety, Div. of State Police*, 604 F.3d 788, 803 (3d Cir. 2010) (denying motion for leave to amend where the "presence of a potential First Amendment retaliation claim long had been apparent").

### B.     Motion for Summary Judgment

In Plaintiff's First Amended Complaint, Plaintiff alleges that Defendants violated his Fourth, Fifth, and Fourteenth Amendment constitutional rights. In addition, Plaintiff alleges that Defendants engaged in malicious prosecution and violated several state criminal laws. Defendants filed the present Motion for Summary Judgment seeking judgment in their favor on each of these claims. For the reasons that follow, Defendants' motion is granted and Plaintiff's First Amended Complaint is dismissed with prejudice.

#### 1.     Claims Against Individual Defendants[6]

##### a.     Fourth Amendment

Plaintiff alleges Fourth Amendment violations in Counts One, Two, Three, and Seven of his First Amended Complaint. *See* FAC at Count I, ¶ 11; Count II, ¶ 6; Count III, ¶ 4; Count VII, ¶¶ 8-9. In Counts One, Two, and Three, Plaintiff alleges that Captain Oswald and Chief Wittig violated his Fourth Amendment rights by issuing him a summons for a speeding offense he did not commit. *See* FAC at Count I, ¶ 5; Count II, ¶ 3; Count III, ¶ 3. The Fourth Amendment protects the "right[s] of the people to be secure in their persons, house, papers, and effects, against unreasonable searches and seizures." U.S. CONST. amend. IV. Plaintiff was not

---

[6] Plaintiff voluntarily dismissed defendants Torres, Papagni, and Finer from the present action with prejudice. Pl.'s Br. at 2. Accordingly, all claims asserted against these defendants are dismissed. In Counts Three and Six of the First Amended Complaint, Plaintiff only asserts claims against these individuals. *See* Pl.'s Br. at 1-2. Therefore, these counts are dismissed in their entirety.

searched, and the evidence before the Court does not establish an actionable seizure. Where a plaintiff was "only issued a summons; [was] never arrested; . . . never posted bail; [was] free to travel; and . . . did not have to report to Pretrial Services," he was not subject to a seizure "within the meaning of the Fourth Amendment." *Penberth v. Krajnak*, 347 F. App'x 827, 829 (3d Cir. 2009) (citations omitted). Accordingly, Captain Oswald and Chief Wittig are entitled to summary judgment on these claims. *See id.*

In Count Seven, Plaintiff alleges that Chief Wittig and Captain Oswald "violated [Plaintiff's] right to privacy as defined under the 4th Amendment, and Fifth Amendment to the United States Constitution." *See* FAC at Count VII, ¶ 8. As the wrongful conduct, Plaintiff alleges that Chief Wittig disregarded a court order, retrieved Plaintiff's expungement records, reviewed these records, and gave the file to Internal Affairs. *See* FAC at Count VII, ¶ 3. Plaintiff alleges that Captain Oswald then violated his rights by accepting the illegally obtained records, conducting a "baseless investigation of Goow," and giving the results of the investigation to the Passaic County Prosecutor. *See* FAC at Count VII, ¶¶ 4-5. Neither of these claims can withstand summary judgment.

Plaintiff argues that Chief Wittig violated his Fourth and Fifth Amendment[7] privacy rights by retrieving, reviewing, and disseminating his expungement records. *See* FAC at Count VII, ¶ 3. Plaintiff acknowledges that the records Chief Wittig received "only contained the

---

[7] In Plaintiff's Opposition, Plaintiff argues that he had also asserted a 14th Amendment privacy claim. *See* Pl.'s Opp'n. at 32. Plaintiff explained that "Count VII states that Defendants' conduct violated Plaintiff's privacy rights," and, "in Count I, Plaintiff states that Defendants' conduct violates Plaintiff's rights under the 14th Amendment." Plaintiff's argument is unpersuasive. *See* Pl.'s Opp'n. at 32. In Count Seven, Plaintiff clearly argues that Defendants violated his "right to privacy" but only identifies the Fourth and Fifth Amendments as the source of these rights. *See* FAC at Count VII, ¶ 8. However, even if the Court were to read the First Amended Complaint as asserting a 14th Amendment privacy claim, it would also fail for the reasons set forth below.

11

motion papers and orders for expungement filed on behalf of Plaintiff." *See* Pl.'s Resp. to DSOF at ¶ 71. "An expungement order does not privatize criminal activity. While it removes a particular arrest and/or conviction from an individual's criminal record, the underlying object of expungement remains public." *Nilson v. Layton City*, 45 F.3d 369, 372 (10th Cir. 1995). Accordingly, the Court holds that Plaintiff "did not have a legitimate expectation of privacy" in his expungement records. *See id.* And, Chief Wittig is entitled to summary judgment on this claim.

Next, Plaintiff alleges that Captain Oswald violated his privacy rights by providing the results of Captain Oswald's investigation to the Passaic County Prosecutor. *See* FAC at Count VII, ¶¶ 5. In support of this argument, Plaintiff relies on a string of cases holding that the employees have a "legitimate expectation of privacy concerning their personnel files." *See* Pl.'s Opp'n. at 33-35 (citing, *e.g*, *Hart v. City of Little Rock*, 432 F.3d 801, 808-809 (8th Cir. 2005); *McGee v. City of Chicago*, No. 04 C 6352, 2005 U.S. Dist. LEXIS 30925, *7 (N.D. Ill. June 23, 2005); *Dozier v. Waffle House, Inc.*, No. 1:03-CV-30932005 U.S. Dist. Lexis 40245, *46 (N.D. Ga. May 4, 2005); and *Knoll v. AT&T*, 176 F.3d 359, 365 (6th Cir. 1999)). Plaintiff's reliance on these cases is unpersuasive for two reasons. First, this line of cases only prohibits the "nonconfidential disclosure" of personnel files, not the confidential disclosure. *See, e.g., Knoll*, 176 F.3d at 365. In the Complaint, Plaintiff only alleges that Captain Oswald provided his investigation to the Passaic County Prosecutor. *See* FAC at Count VII, ¶¶ 5. None of the evidence before this Court suggests that this disclosure was not confidential. In Plaintiff's opposition, Plaintiff alleges a second disclosure to Corporate Counsel Sue Champion, but, even considering this disclosure, Plaintiff again fails to provide any evidence supporting a finding that this disclosure was not confidential. *See* Pl.'s Opp'n. at 34.

12

Second, the line of cases relied on by Plaintiff only prohibited the disclosure of "personnel files" and did so because such files may contain embarrassing or sensitive information like an employee's "social security number, driver's license number, residential address and contact information, financial information, names of family members, names of insurance beneficiaries, wage information, and other private matters." *See, e.g., McGee*, 2005 U.S. Dist. LEXIS 30925 at \*7. Here, the crux of Plaintiff's Complaint is that Captain Oswald disclosed evidence of Plaintiff's expungement record, which, as discussed above, is not entitled to constitutional protection. Plaintiff attempts to salvage his claim by arguing that Captain Oswald obtained "subpoenas for various training records and other personnel files of Plaintiff's." *See* Pl.'s Opp'n. at 10. However, Plaintiff acknowledges that Plaintiff's employer, "Haledon[,] only supplied Plaintiff Goow's Police Training Certificate," which is not the sensitive personnel information protected by these cases. *See* Pl.'s Opp'n. at 11; *see also McGee*, 2005 U.S. Dist. LEXIS 30925 at \*7. Accordingly, Captain Oswald is entitled to summary judgment on Plaintiff's Fourth and Fifth Amendment privacy claims.

### b.   Fifth Amendment

In Counts One, Two, and Three of the First Amended Complaint,[8] Plaintiff alleges that Captain Oswald and Chief Wittig violated his Fifth Amendment rights by issuing him a summons for a speeding offense which Plaintiff denies committing. *See* FAC at Count I, ¶¶ 5, 11; Count II, ¶¶ 3, 6; Count III, ¶¶ 3, 4. The Fifth Amendment provides that no "person shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. The

---

[8] Plaintiff also alleges a Fifth Amendment violation in Count Seven of his complaint. *See* FAC at Count VI I, ¶ 8. Specifically, Plaintiff argues that Chief Wittig and Captain Oswald violated his "right to privacy as defined under the . . . Fifth Amendment to the United States Constitution." *See* FAC at Count VI I, ¶ 8. For the reasons set forth above, this claim is without merit, and Defendants are entitled to summary judgment.

Fifth Amendment is a "trial right." *See United States v. Verdugo-Urquidez*, 494 U.S. 259, 264

(1990). Although "conduct by law enforcement officials prior to trial may ultimately impair that

right, a constitutional violation occurs only at trial." *See id.* Here, Plaintiff does not, nor can he,

allege that he was tried for his speeding summons. And, the only statement Plaintiff

acknowledges giving was a voluntary speech at a city council meeting. *See* Pl.'s Resp. to DSOF

at ¶ 51. Accordingly, Chief Wittig and Captain Oswald are entitled to summary judgment on

Plaintiff's Fifth Amendment claims. *See Verdugo-Urquidez*, 494 U.S. at 264.

### c.   Fourteenth Amendment

The Fourteenth Amendment provides that no state shall "deprive any person of life,

liberty, or property, without due process of law; nor deny to any person within its jurisdiction the

equal protection of the laws." U.S. CONST. amend. IV.   In Counts One, Two, and Three of the

First Amended Complaint, Plaintiff alleges that Captain Oswald and Chief Wittig violated his

Fourteenth Amendment due process rights. *See* FAC at Count I, ¶ 11; Count II, ¶ 6; Count III, ¶

4.  In Count Seven, Plaintiff alleges that Captain Oswald and Chief Wittig denied him "equal

protection of the laws." *See* FAC at Count VII, ¶ 9.  For the reasons that follow, Defendants are

entitled to summary judgment on each of these claims.

### i.   Due Process Claims

In Count One, Two, and Three of the First Amended Complaint, Plaintiff alleges that

Captain Oswald and Chief Wittig violated Plaintiff's due process rights under the Fourteenth

Amendment. *See* FAC at Count I, ¶ 11; Count II, ¶ 6; Count III, ¶ 4.  Specifically, Plaintiff

argues that Captain Oswald and Chief Wittig unlawfully issued Plaintiff a summons for

speeding.[9]  *See, e.g.*, FAC at Count I, ¶ 5.  In order to succeed on this claim, Plaintiff must be

able to prove that Defendants "lacked probable cause."  *See Curan v. Dural*, 512 F. Supp. 699,

704 (E.D. Pa. 1981).  Probable cause is a question for the Court, so the Court may consider

whether probable cause existed in this case.  *See Sharrar v. Felsing*, 128 F.3d 810, 818 (3d Cir.

1997) ("[The] question [of probable cause to support an arrest in a § 1983 action] is for the jury

only if there is sufficient evidence whereby a jury could reasonably find that the police officers

did not have probable cause to arrest.").  In so doing, while the Court is "required in the present

posture of the case to accept all the facts as stated by [Plaintiff], to resolve disputes about the

facts in his favor, and to draw all inferences to his benefit, at the time the events transpired

[Defendant] was under no similar obligation."  *See Curan*, 512 F. Supp. at 704 (citing *Martinez*

*v. E. J. Korvette, Inc.*, 477 F.2d 1014, 1016 (3d Cir. 1973)).

Here, on December 24, 2006, Plaintiff allegedly drove 50 to 54 miles per hour in a 25

mile per hour zone.  *See* DSOF at ¶ 49.  Captain Oswald investigated this alleged infraction and

issued Plaintiff a summons for speeding on January 22, 2007.  *See* DSOF at ¶ 49.  Captain

Oswald's investigation involved two steps.  First, Captain Oswald consulted with Officer

Goodson who was traveling behind Plaintiff during the alleged infraction.  *See* DSOF at ¶ 47.

Officer Goodson "estimated that the vehicles were traveling between fifty (50) and fifty-five (55)

miles per hour, well above the residential speed limit of twenty-five (25) miles per hour" in that

location.  *See* DSOF at ¶ 21.  Next, Plaintiff consulted with Lieutenant Papagni, an "accident

reconstruction expert."  *See* DSOF at ¶ 48.  Lieutenant Papagni reviewed the radio transmissions

---

[9] In Plaintiff's Opposition, Plaintiff now argues that his due process rights were violated as the
result of the "internal affairs investigation pertaining to him."  Pl.'s Opp'n. at 66.  This argument
fails for two reasons.  First, Plaintiff cannot set forth new claims in his Opposition to
Defendants' Motion for Summary Judgment.  *See Bell v. City of Philadelphia*, 275 F. App'x 157,
160 (3d Cir. 2008).  Second, even if Plaintiff had alleged this Fourteenth Amendment privacy
right, it would fail for the reasons discussed above.

and the surveillance videotape retrieved from a Burger King and "opined that Plaintiff was traveling in excess of fifty (50) miles per hour."[10] *See* DSOF at ¶ 48.

Although the Plaintiff contests the validity of Officer Goodson and Lieutenant Papagni's statements, the question before the Court is not whether Plaintiff *was* traveling "between fifty (50) and fifty-four (54) miles per hour in a twenty-five (25) mile per hour zone," but instead whether Captain Oswald had "probable cause" to *believe* Plaintiff was speeding. *See Curan*, 512 F. Supp. at 704. Here, Captain Oswald consulted with an eyewitness and spoke with an "accident reconstruction expert." *See* DSOF at ¶ 21, 47-48. Both opined that Plaintiff had committed the charged offense. *See* DSOF at ¶ 21, 47-48. Accordingly, Plaintiff did not meet his burden of proving Defendants "lacked probable cause," and Captain Oswald and Chief Wittig are entitled to summary judgment.

### ii.    Equal Protection

In Count Seven of the First Amended Complaint, Plaintiff alleges that Captain Oswald and Chief Wittig violated his "right to equal protection under the Fourteenth Amendment." *See* FAC at Count VII, ¶ 9. The Fourteenth Amendment prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV. In order to establish a prima facie case, a plaintiff needs to prove that he was a member of a "protected class" and "received different treatment than that received by other similarly-situated individuals." *Oliveira v. Twp. of Irvington*, 41 F. App'x. 555, 559 (3d Cir. 2002) (citations

---

[10] The Court need not address the validity of Lieutenant Papagni's research. The operable question here is whether Defendant believed the results of the Lieutenant Papagni's analysis and there is no evidence in the record to the contrary. *See Curan*, 512 F. Supp. at 704 (citing *Martinez*, 477 F.2d at 1016.

omitted). In other words, Plaintiff must demonstrate the existence of purposeful discrimination.
*Id.*

Here, Plaintiff fails to meet his burden. In the First Amended Complaint, he alleges that
Chief Wittig and Captain Oswald "violated [his] right to equal protection under the Fourteenth
Amendment;" however, Plaintiff does not once assert that he was a member of a "protected
class" or that either defendant treated him differently than "other similarly-situated individuals."
*See generally* FAC at Count VII, ¶¶ 1-9. The only reference to discrimination in the First
Amended Complaint is in Count Five. *See* FAC at Count V, ¶¶ 3-4. There, Plaintiff argues that
Mayor Torres engaged in "political vengeance" and sought to "vindictively harm [Plaintiff], his
political rival." *See* FAC at Count V, ¶¶ 3-4. Plaintiff has since dismissed Mayor Torres from
this action with prejudice. Pl.'s Br. at 2.

In Defendants' summary judgment motion, Defendants identified these pleading
deficiencies and argued that "Plaintiff cannot prove that he was discriminated against or that
others similarly situated were treated different." Defs.' Br. at 13-14. Plaintiff submitted a 51-
page Opposition—well in excessive of the 40-page limit set forth in the local rules—yet never
once addressed this equal protection claim against Chief Wittig and Captain Oswald or the
arguments set for by Defendant. *See generally*, Pl.'s Opp'n. at 28-79. And, Plaintiff does not
identify a single piece of evidence in support of his equal protection claim. Instead, Plaintiff
devotes approximately 33 pages of his Opposition to First Amendment and New Jersey Civil
Rights Acts claims, both of which were absent from the First Amended Complaint. *See* Pl.'s
Opp'n. at 35-63, 69-74.

Even assuming it were the Court's jobs to dig through the pleadings to locate potential
arguments on Plaintiff's behalf, Plaintiff's Equal Protection claims against Chief Wittig and

17

Captain Oswald would still fail. *See Oliveira*, 41 F. App'x at 559. The evidence before the Court does not support a finding that Plaintiff was a member of a protected class. *See id.* Plaintiff never once claims that he was discriminated against based on his gender, race, or national origin. *See* FAC at Count VII, ¶¶ 1-9. The only argument that Plaintiff could potentially make is that he was discriminated against based on his political affiliation, but Plaintiff does not set forth such allegations in his First Amended Complaint. *See* FAC at Count VII, ¶¶ 1-9.

Finally, even if Plaintiff could identify an applicable protected class, there is no evidence in the record that Chief Wittig or Captain Oswald treated Plaintiff differently than "other similarly-situated individuals" as a result of this class status. *See Oliveira*, 41 F. App'x at 559. Plaintiff does not identify a single "similarly-situated individual" that was treated differently, nor is there any evidence in the record that would support such a finding. *See id.* The only individuals Plaintiff identifies that were allegedly discriminated against were City of Patterson police officers who were retaliated against for campaigning for Mayor Torres' political opponent. *See* Pl.'s Opp'n. at 52-53. Plaintiff, however, that he was not a City of Paterson police officer. Accordingly, the evidence before the Court does not establish "purposeful discrimination," and Defendants are entitled to summary judgment. *See Oliveira*, 41 F. App'x at 559.

### d.   Malicious Prosecution

In Count Eight of the First Amended Complaint, Plaintiff alleges that Captain Oswald and Chief Wittig's "conduct amounted to malicious prosecution" of Plaintiff. *See* FAC at Count VIII, ¶ 3. To state a § 1983 claim for malicious prosecution, a plaintiff must establish the following elements: (1) the defendants initiated a criminal proceeding; (2) the criminal

18

proceeding ended in plaintiff's favor; (3) the proceeding was initiated without probable cause; (4)

the defendants acted maliciously or for purposes other than bringing the plaintiff to justice; and

(5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a

consequence of a legal proceeding. *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir.

2003). Here, the evidence before the Court does not support a finding of malicious prosecution.

As discussed above, Plaintiff "[was] never arrested; . . . never posted bail; [was] free to travel;

and did not have to report to Pretrial Services." *See Penberth*, 347 F. App'x 827 at 829 (citations

omitted). Therefore, he did not suffer a deprivation of liberty consistent with the concept of

seizure, and Defendants are entitled to summary judgment. *See Estate of Smith*, 318 F.3d at 521.

### e.   Remaining Allegations

Finally, in Counts Seven and Eight of the First Amended Complaint, Plaintiff alleges that

Captain Oswald and Chief Wittig "violated criminal laws in New Jersey, specifically,

disclos[ing] [] an expunged record in violation of N.J.S.[A.] [§] 2C: 52-30," engaging in official

misconduct in violation of N.J.S.A. § 2C: 30-2, and disobeying a court order in violation of

N.J.S.A. § 2C: 29-9. *See* FAC at Count VII, ¶ 7; Count VIII, ¶¶ 4, 6. Defendants correctly assert

that none of these statutes are "a basis for relief in a civil action." Defs.' Br. at 31. The language

of the statutes does not provide for civil enforcement, and "Section 1983 liability arises only

from a violation of federal statutory or constitutional rights under color of state law," not

violations of state criminal statutes. *See* N.J.S. §§ 2C: 52-30, 2C: 30-2, and 2C: 29-9; *see also*

*D.R. v. Middle Bucks Area Vocational Technical School*, 972 F.2d 1364, 1375 (3d Cir. 1992).

Accordingly, Plaintiff's claims are dismissed with prejudice.[11] *See D.R.*, 972 F.2d at 1375.

---

[11] In light of these findings, the Court need not address Defendants' argument that "Plaintiff has
failed to set forth any evidence that would support an award of punitive damages" against
Captain Oswald or Chief Wittig. Defs.' Br. at 37.

## 2.   Claims Against the City of Paterson[12]

In Counts Five, Seven, and Eight of the First Amended Complaint, Plaintiff seeks

damages from the City of Paterson for alleged violations of Plaintiff's constitutional rights.

Plaintiff moves for summary judgment on two grounds. *See* FAC at Count V, ¶ 2; Count VII, ¶

10; Count VIII, ¶ 7. First, Defendants argue that a municipality cannot be liable under a theory

of respondeat superior. Defs.' Br. at 36. Second, Defendants that Plaintiff failed to establish a

claim against the City under *Monell v Dept's of Social Services*, 436 U.S. 658 (1978). Defs.' Br.

at 35. For the reasons that follow, the Court agrees, and Plaintiff's claims are dismissed with

prejudice.

### a.   Respondeat Superior

Plaintiff seeks damages from the City of Paterson in Counts Five, Seven, and Eight of the

First Amended Complaint. *See* FAC at Count V, ¶ 2; Count VII, ¶ 10; Count VIII, ¶ 7. In Count

One, Plaintiff states that the City of Paterson is "being sued in its official capacity based on the

illegal and unlawful conduct of [its police] who unlawfully issued said summons to [Plaintiff]

and for violating his Civil and Constitutional rights." *See* FAC at Count V, ¶ 2. In Count Seven,

Plaintiff argues that the City is responsible for Chief Wittig and Captain Oswald's actions "based

on a theory of Respondeat Superior." *See* FAC at Count VII, ¶ 10. And, in Count Eight,

Plaintiff argues that the City is "responsible for the actions of the police and other city

employees." *See* FAC at Count VIII, ¶ 7. A municipality cannot be held liable on the basis of

respondeat superior. *See Monell*, 436 U.S. at 694. Accordingly, Plaintiff's claims against the

---

[12] In the First Amended Complaint, Plaintiff seeks punitive damages from the City of Paterson.
*See* FAC at Count V, VII, and VIII. However, the Supreme Court has clearly held that a
"municipality is immune from punitive damages under 42 U.S.C. §1983." *See Newport v. Fact
Concerts*, 453 U.S. 247, 271 (1981). Accordingly, Plaintiff's claim for punitive damages is
dismissed with prejudice.

City of Paterson in Count Seven of the complaint clearly cannot survive summary judgment. *See id*. And, to the extent Count Five and Count Eight seek damages under this theory, these claims are also dismissed with prejudice. *See id*.

### b.   *Monell* Liability

In Counts Five and Eight of the First Amended Complaint, Plaintiff alleges that the City of Paterson is "responsible for the actions of the police and other city employees" and is " being sued in its official capacity based on the illegal and unlawful conduct of Torres, Whittig [sic], Oswald, and Papagni who had unlawfully issued said summons to Goow and for violating his Civil and Constitutional rights." *See* FAC at Count V, ¶ 2; Count VIII, ¶ 7. A plaintiff is only permitted to pursue claims against a city where the "execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible for under § 1983." *See Monell*, 436 U.S. at 694.

Here, Plaintiff argues that the City of Patterson is liable under *Monell* because Chief Wittig acted as a "policymaker for purposes of municipality liability" and Chief Wittig's "conduct establishes liability upon the City." *See* Pl.'s Opp'n. at 80. Plaintiff's claim fails for two reasons. First, as discussed above, Plaintiff has not proven the existence of an underlying constitutional violation. Second, even if Plaintiff established an underlying constitutional violation, Plaintiff cannot identify a single policy or custom causing such an injury. *See* Pl.'s Opp'n. at 80. Plaintiff argues in his Opposition that the City of Paterson had a "policy whereby First Amendment retaliation was not only acceptable but spearheaded by the Chief of Police." Pl.'s Opp'n. at 80. But, the First Amended Complaint does not include any First Amendment retaliation claims. And, for the reasons discussed above, Plaintiff is not permitted to amend his complaint to allege these violations. Accordingly, the facts before this Court will not support a

municipality claim, and the City of Paterson is entitled to summary judgment. *See Monell*, 436 U.S. at 694.

**IV.    CONCLUSION**

For the foregoing reasons, Plaintiff's Motion for Leave to File a Second Amended Complaint is denied, and Defendants' Motion for Summary Judgment is granted in its entirety. An appropriate Order accompanies this Opinion.

DATED: March 6, 2013

JOSE L. LINARES
UNITED STATES DISTRICT JUDGE

22